21-1822 Bowman v. Capra I trust the presider will permit me to suggest that you have nine times as many clients as we've already heard. It doesn't mean you have to go nine times as long, does it, Your Honor? Understood, Your Honor. Good morning. Matthew Bova for the petitioner's appellants in this case. I'd like to jump right to the question of, that was dominating the argument just before, about whether you can actually, under 1983, seek release. And the answer is you cannot. You can only seek release under 2254 under 2254. That's the plain text of 2254. And I just want to read it for the court because I think it controls the case. A district court shall entertain a habeas application in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution. Now, the district court below and the state here do not deny that our petition alleges that we are in custody in violation of the Constitution, in violation of the Eighth Amendment under Helling v. McKinney and the deliberate indifference statement. Our petition comprehensively alleges that social distancing is necessary to prevent the spread of the virus, that social distancing is impossible in the Sing Sing prison due to the nature of the congregate tight setting of a prison, and that therefore the only way, the only way to protect the health of petitioners is to release them. So how do you distinguish it from any other, and maybe you don't, maybe that's the answer, but how would you distinguish it, if you can, from any prison conditions case in which for whatever, you know, plausible or not plausible, it seeks release as the remedy? So those are all merits issues. I mean, I think when you're analyzing subject matter jurisdiction, which is effectively what we're doing here, we're asking whether it states a claim under 12b-6. Is it a federal habeas claim, or is it stating a 1983 claim? You credit the allegations, and then all of the questions about the underlying merits, the frivolity of the factual allegations, whether the factual allegations make sense, whether AEDPA standards are, whether AEDPA standards are overcome, whether Twombly and Iqbal allow for a basis for dismissal at the pleading stage. Those are all remedies available to a district court when the district court says, this properly states in general a cause of action because you're alleging that you're seeking release on the grounds that- But you have circumvented 1983 restrictions based on the remedies side. No, Your Honor. It's not circumventing it. It's actually completely consistent with it, because what Congress has done, Congress has set up a remedies regime, which is based on what the petitioner is seeking. That's exactly what 2254A does when you look at the PLR and compare that with the PLRA. They work together. The PLRA specifically says a claim for release cannot be brought under 1983. Now, the discussion of Brown v. Plata, the only way you can get to release under 1983 is if you're opening gambit, you're opening petition, is alleging that you are, that there's unconstitutional conditions in the prison, but you're not alleging release. Then, if after many years the district court determines that the state prison system has failed to comply with injunctive orders to cure those conditions, then release as a last-ditch effort is available. But it's only then, under the PLRA, you only get to that when the initial claim is first alleging unconstitutional conditions that are curable. And that's a perfectly sensible, consistent scheme exactly with what Prizer held. So, if I can't persuade you with the text of 2254A, which is, in our view, all we need, Prizer does the trick, because Prizer specifically says, we hold today, and this is a quote, that when a state prisoner is challenging the very fact of his physical imprisonment and the relief he seeks is a determination that he is entitled to immediate release, his sole remedy is a writ of habeas corpus. And in that remedy, what happens? Release without conditions? Home confinement's not an option? It's just release with no supervision? Oh, no, not at all. Because supervised release gives us exactly what we want. Our petition alleges that the problem is the congregate setting inside the prison. So you could, just thinking through the practicalities, if it proceeds as 2254, and you prevail, and the writ that's granted orders the release of the state prisoner with home confinement, that's fine? Yes, with home confinement, and it's also temporary release. That's all we ask for in our complaint. So what was that? What does that mean, the temporary release? I'm sorry. So the... Could I just finish? I'm sorry. And they're supervised by the state parole system? Yes, Your Honor, that would be totally consistent with the claim that we're seeking. And what happens if it's violated? I mean, if there's a violation at that point, the Eighth Amendment would bar... I mean, it depends on the violation. If there's an ongoing Eighth Amendment violation, and there is a holding from the district court, I think we're getting way into the merits here. But I think it's important, because we are talking about the federal court sort of dictating how the state handles its prisoners. And you said it could be with supervision, it could be with home confinement. I think you're circling around if there's a violation, it doesn't matter, can't go back to prison. Well, if there's been a finding that the prison is currently suffering an ongoing constitutional violation, then no. I mean, you cannot be sent back into the Eighth Amendment violation. So there's not really supervision, not enforceable supervision. I suppose you could have words, but no enforceable supervision through reincarceration. No, I mean, you can have... First of all, there can be sanctions, but second of all, there can also be criminal convictions. We're just talking about that while the pandemic is creating an unconstitutional condition in the prison facility, it is unconstitutional to punish an individual by subjecting them to that. And it's not also, I just want to make it clear too, it's not all incarcerated individuals. But in that defense, just again, spinning it through, that defendant, that released prisoner. And the reason I'm asking this, because it really seems to get to me the difference between what habeas does when it vacates a conviction versus what you're seeking. So reporting requirements, don't leave your home, don't leave the geographic area, don't commit other crimes. Essentially, that prisoner can't go back during the pendency, no matter what, during the pendency of the pandemic. During the temporary period where there is an ongoing... If they commit another crime, can they be detained pre-trial? They could be, if the facility that they're detained in is not going to be raising a constitutional violation. So some facilities then, during the pandemic, would be able to take care of your petitioners? Currently, our petition alleges that this is a problem with the state prison system in general. So no, I don't think so. So once that issues, that person, no matter what crimes they commit at the state level, can't be incarcerated again, during the pandemic. During the ongoing violation of the- After the release, they can't be- I think it would be very simple for the state to have a system in place for something like that, where someone can be confined, that's not a violation of the amendment. But I just want to get to- Okay, so that's interesting, because that suggests that there is some way for the state prison system to accommodate health conditions and the like during the pandemic. I think that that's an issue that would have to be- That's an issue that would have to be assessed by the district court, because it goes to the merits of the claim. It goes to whether or not our pleading allegation that there is no way to cure this is actually correct. I think in a system where you have someone that's on parole and is committing another offense, I think the state can devise a stopgap measure to deal with something like that. But I just think, more fundamentally, this is for Congress. Congress did not say you can seek, you seek habeas relief, you must seek habeas relief when you're challenging your custody, except when there's a question about what might happen to you after your release on parole, or except when you're challenging the conditions of confinement. Congress did not say that. Congress did not insert that limitation into the text of the statute. And it's not for the court, then, to insert that same limitation, because that would just be effectively rewriting the statute. And I think that, more fundamentally, too, given the posture of this case, these are all issues that really are not presented given the way this case comes to this court. The district court did not rule on the grounds that we're currently talking about now, about whether the remedy is actually a good, legitimate revenue under the law. That's not what the district court held. The district court simply said, anytime any individual, no matter what, alleges that a condition is creating an ongoing violation, even where they are saying release is necessary because it cannot be cured, as a matter of effectively the subject matter jurisdiction created by Congress, habeas is not available. May I ask you a question? I'm not arguing, I'm really asking the question. There's a Supreme Court case called Muhammad, I-40 U.S., and the court says, Federal law opens two main avenues to relief on complaints related to state imprisonment. A petition for habeas corpus, 28 U.S.C. 2254, and a complaint under 42 U.S.C. section 1983. Challenges to the validity of any confinement or to particulars affecting its duration, validity or duration, are the province of habeas corpus. Requests for relief turning on circumstances of confinement may be presented in the section 1983 action. Would you explain that to me in the context of your position? Well, because I think all Muhammad is doing is tracking Prizer, but in that case, it's not dealing with the question presented here, which is whether a conditions claim where the remedy requested is released. But Prizer draws basically the same line. It also uses fact of confinement is unconstitutional. But this is not controlled by that language from however many Supreme Court cases there are. The case before us is not controlled by that. That is to say, it's a habeas case. Well, because Muhammad wasn't addressing a conditions claim where the remedy requested was released. I mean, I think the answer to that is Prizer. The answer, because Prizer specifically pins the analysis to the relief request. And that's totally consistent with the text of 2254, 2254A. So I think that any additional questions kind of beyond this core question really just goes to the ultimate merits of our constitutional claim, not whether we have pled a cause of action under 2254. Nice. John, do you want to go? Well, I would like to ask, you did seek in these petitions for temporary release. The language used, I think, was until the pandemic ends or during the pandemic. So what happens to decide, what controls whether the pandemic ends? So the question of whether the health conditions within prison, A, pose a grave risk of serious illness or death to the petitioners, and B, whether those can be cured within the prison or whether release is required, I mean, those are the kinds of questions under Helling that a court would have to decide. Those are the Eighth Amendment questions. Those are the health questions that the Supreme Court has required district courts to address. So this, I mean, at some level this is a mootness question. If the release you had sought was, and this is hypothetical because it wasn't, but release until effective vaccines are widely available, would the claims be moot? I don't think that's a mootness issue. I think that just goes to that's an issue that would have to be assessed as a matter of fact-finding, whether or not ultimately, I mean, specifically whether that has been established. Assessed factually as a mootness question or a merits question, or it just conflates into the same thing? I think it's ultimately a merits question because if someone is filing a lawsuit and saying, I only win under X conditions, and then those conditions are satisfied, it's effectively whether it be characterized as mootness or merits. I mean, the bottom line is the claim, that claim would fail. But at this point, we're not there. And that would be, that would be the questions about whether we're currently enduring unconstitutional conditions, which is all caked into this question of whether the pandemic at this point is triggering a risk of grave serious illness that can only be cured by release. Those are all questions that are merits questions. And the district court's ruling said it did not matter. As this case comes to this court, the district court said even if it were stipulated by the state of New York that grave risk will suffer and that the only way to prevent that grave risk is release, 2254 is not available. That is the district court's ruling. And I think all this court needs to do is address that particular issue. Tell me what would happen if all of that so, but they proceeded under 1983. They could not get effective relief under 1983. Yes, under 1983, we would, we could not get release under 1983. That's 18 U.S.C. 3626 and then sub 2A specifically defines, specifically limits 1983 and the prisoner relief, the prisoner release orders that come under 1983 to exclude cases where it's a habeas claim challenging the fact of confinement. Where it's a habeas claim challenging. Yes. So that just subsumes the question, not responsive to Judge Sack's question of whether a 1983 claim could seek release based on conditions of confinement. And we know, at least with respect to prison overcrowding, as difficult as that may be, the answer is yes. But I think you say effectively no because it's so difficult, right? Well, I mean you can't, I don't think it's helpful to just say it excludes habeas claims. That doesn't, so then the hypo is that if this exact same claim is brought as a 1983 and not habeas, could you seek release? So the answer, because what Congress did in 3626, so the answer is no. You cannot seek release under 1983 and the PLRA because what Congress did was they specifically tracked Pryser's language. In G2, they said the term civil action with respect to prison conditions means any civil proceeding arising under federal law, ellipsis, but does not include habeas corpus proceedings challenging, and I think this is Pryser, challenging the fact or duration of confinement in prison. So it doesn't answer the question of whether, if it's not brought as a habeas, but it's brought as a 1983, seeking those same things. That language doesn't tell us the answer to Judge Sack's question, does it? No, because what Congress is saying here is prisoner release orders that are available down the road under the PLRA are not available where you're challenging the fact of- Where you've brought it as a habeas. No, no, it doesn't- It's just subsuming the question in that textual language. But I understand your argument. Could I ask about the jurisdictional question that we put the order out to? And just the same way I asked it earlier, as it's currently postured, is there anything that we could do without expanding the COA that would provide relief to any of your clients? So, no. I mean, if the court, the only way for us to get relief here is if the court grants the COA on the exhaustion issue and ultimately finds that we sufficiently exhausted it. And so as an appellate jurisdiction or mootness question, this is my sequencing obsession, do we have to take that question first? So I view it as a sequencing issue, not as a jurisdictional issue. I mean, it's the same thing as, say, harmless error. A court is not required as a matter of mootness or appellate jurisdiction to review harmless error first before reaching the merits, even though the harmless error- The exhaustion question isn't before us as a matter of appellate jurisdiction unless we expand. So given that, do we need to take the exhaustion issue first? I think whether it be viewed as appellate jurisdiction or whether it just be viewed as just prudence, I think that because the exhaustion issue is necessary for the resolution of this case, the court should take that issue up first. And so then, if we conclude that the COA shouldn't be expanded, do we have jurisdiction to proceed or is it moot? Because, as you said, there's no relief we could provide your clients. No, at that point, if there's a no exhaustion finding or a COA is not granted on exhaustion, then no, there's no, then the case is over. We don't know. It's moot at that point. Yes. Yeah, okay. All right, thank you, Mr. Bloom. Thank you. And you do have, well, I don't know, do you have time on your bottle? I don't have anything on my piece of paper. Oh, yeah, I did request two minutes. Two minutes. Sorry. Then we'll give you at least that. Mr. Amond. Rhymes with Raymond. Still pronouncing your name the same way that you did an hour ago. Thank you. May it please the court, Andrew Amond again for the respondent. A sentence state prisoner's suit alleging that he is confined under conditions that violate the Eighth Amendment is a classic example of a civil rights action under Section 1983. The dispositive question is whether the challenged conditions violate the Constitution. And Congress, in the Prison Litigation Reform Act, or PLRA, has prescribed a specific set of procedures to determine when such a violation exists and what remedies are warranted, including the possibility of release. It would bypass that very legislation adopted by Congress to address this very type of claim if prisoners could file complaints about prison conditions only, label that a habeas corpus petition, and then obtain review of the same claim using different procedures. I'd like to speak to a few different points that my friend has made. First, it is a mistake, and I don't see honestly where the language says this, to read the PLRA as foreclosing a Section 1983 claim that conditions are unconstitutional and that release is the only remedy that will work. Such a claim can be brought and pleaded. The ultimate availability of release may be subject to the special restrictions on prisoner release orders. Let's imagine we're back in the beginning and the height of the pandemic. We're pre-vaccines and treatment and testing, and you've got somebody with very serious health conditions. They bring a 1983 claim after exhausting administrative remedies. That could proceed in some way that would allow release in time to potentially save their life if that's what's necessary? Yes, Your Honor. It could proceed on an expedited basis for if that person were seeking relief, falling within the confines of a prisoner release order as defined. The statute says there has to be a reasonable amount of time to try the remedies first, but that a reasonable amount of time is a flexible amount, so that person could go that route. There are also district courts that, in the early days of the pandemic, suggested or concluded that an individual request for release as necessary to save an individual's life because of a medical vulnerability could be available under the PLRA without having to fulfill all of the requirements for a prisoner release order. Do you have an example? Yes. Two cases on this point are Cameron versus, one is Cameron versus Bouchard. That's 462 F SUP 3rd 746. Another example, at least recognizing that possibility in dicta, is Money versus Pritzker. That's 453 F SUP 3rd 1103. I would also commend to this court's attention a decision in Plata versus Brown from 2013. That's 427 F SUP 3rd 1211. And in that case, after the Supreme Court had approved the prisoner release order in Brown versus Plata, there was an outbreak of a particular infection at a particular facility, and the district court's analysis, I think, was instructive. It ordered transfer of medically vulnerable inmates away from that facility and explained that transfer to a different type of confinement that would comport with the Eighth Amendment is not a prisoner release order that would require convening a three-judge panel under the PLRA. Was that a COVID case? That was a pre-COVID case. I'm asking you for a reason, because there's an odd sense in the meeting here that we're talking about COVID, whereas there's no reason to think that there wasn't once a Spanish flu and there wasn't once a smallpox epidemic and there won't be a bird flu epidemic. It's not just, here's COVID, it's going away, it's not an issue. That's correct. However, in previous cases, courts have not recognized COVID claims based on medical allegations of a medical infection. In other words, it didn't matter that it was COVID. Correct. What COVID did, well, COVID may have made it more plausible that release was a necessary remedy than, for example, in the fielding case. But simply because it is plausible that a prisoner release order might be necessary does not provide a reason to consider the claim in a way that bypasses the very procedures that Congress set forth to deal with this very situation in the PLRA. I would also point out a couple of things. The essence of this claim, because it was COVID, is that prison density does not allow for social distancing. That is a claim that fits very nicely within, I think, the bounds of what Congress said when it said that a prisoner release order requires a finding based on crowding, not overcrowding, just crowding. The other point... Could I ask... Sorry, yes. Could I ask... Do you think... How do you think about the mootness question or not with respect to where we are in the pandemic, the availability of vaccines and remedies? And I don't... Forgive me if I asked you that when we saw you a while ago, but not with respect to the person who's been released, but with respect to all of the other claims. The respondent has not moved to dismiss on mootness grounds at this point. That said... I think we have our own obligation on that one. Yes. We're interested in New York's position. Either as of this moment or imminently in the future, there would be reasonable grounds, New York would agree for this court to conclude that these claims for temporary release during the pandemic are in fact moot. And New York would not, I don't believe, oppose or seek further review of a judgment reaching that conclusion in light of the availability of vaccines, updated vaccines, updated COVID treatment medication. I was struck on your brief by how much you relied on the varying levels of kinds of hurdles and types of hurdles and height of hurdles for prisoners proceeding in habeas versus prisoners proceeding in 1983. And you repeatedly pointed to filing fees and the three strikes rule and so on in the PLRA and seem to overlook the kind of state comedy concerns that are reflected by the state exhaustion, state court exhaustion rules in 2254. Do you see the two regimes as not both cognizant of comedy interest between federal and state courts and the 1983 regime just more amenable to addressing those concerns in some way? Do you understand what I'm saying? I do. It's true that both regimes impose exhaustion requirements, for example, that are one instance where they demonstrate comedy. But when the claim is, the essence of the claim is conditions of confinement, we would submit that Congress has made clear that it wants the comedy interests to be served specifically by the procedures set forth in the PLRA. And that makes sense because what that requires is administrative exhaustion. In other words, that places the issue of conditions of confinement claim in the first instance squarely on the prison administrators who are expert and able to remedy the problem in the first instance. It then allows a federal court case where prison conditions can be assessed based on what's going on in real time and where a court is required to specifically draw relief narrowly. But might there be, I mean, still, maybe these were quite anomalous circumstances. Certainly hope we don't see them again soon, notwithstanding bird flu and so on. But still, we were in a situation where people were dying at a horrifying rate and there was a sense of urgency. The state courts were, I mean, I guess there was a question about whether the state courts were functioning any more than the prisons were functioning particularly well. But the state courts were in a position to protect the state's interests in not seeing prisoners released. And there was a claim for immediate release that I think was perhaps just more plausible than the claim made in fielding. So there seemed to be, this is a kind of marginal case, not a core conditions of confinement. And that sounds more like what the Prizer court was talking about where release and the fact of custody was more at the core of the petition that was brought. Is that just a wrong way of thinking about it? That is not, in fact, what Prizer was talking about. What the court said in Prizer and in a number of cases since, is that there is a distinction between conditions of confinement cases and cases challenging the fact or length or factor duration of confinement. And that is the language, that is the narrow carve out in the PLRA. And how the court has described that in many decisions over the years, that fact or length, that core habeas claim is in Mohammed versus Close. It's a case where the habeas petitioner is seeking a judgment at odds with his conviction or with the state's calculation of time to be served in accordance with the underlying sentence. Yes, I'm familiar with that, but still here we had a claim that was challenging the fact of confinement. Because congregate housing is kind of a binary or claim that being housed in congregate housing was incompatible with the individual because of health conditions. And that he was sentenced to confinement but not to death. And that was the image that was drawn. So you just reject that and you say you have to, even though the fact of confinement was being challenged by virtue of the remedy that was sought, that this is still ultimately a conditions of confinement case no matter how framed. And so it belongs to 1983. Is that right? Yes, but if I could elaborate on that. Please. Congress in section 3626 said as much. It defined the PLRA or it said the PLRA governs civil action, any civil action under federal law with respect to prison conditions and defined that to mean any civil proceeding arising under federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison. But does not include habeas corpus proceedings challenging the fact or duration of confinement in prison. When Congress did that, it was picking up on language that was coined by the U.S. Supreme Court in Prizer versus Rodriguez and has been used again in a number of decisions since. When Congress does that, as the Supreme Court has instructed, federal courts understand Congress to have used the language as it was used in the Supreme Court cases. McCarthy versus Bronson, 500 U.S. 136 is informative on that issue. And in Prizer, there was no idea that someone would be challenging the fact or length of their confinement in a way that would be a core habeas claim simply based on conditions of confinement. Blackstone defined habeas corpus, described habeas corpus famously as an inquiry into the cause of the confinement. And that was a consistent understanding of the U.S. Supreme Court up until in the late 1960s, early 70s. There begins to be a question, and I think this is important in Bell versus Wolfish, what the Supreme Court says is that we leave to inundate the question of the propriety of using the word of habeas corpus to obtain review of the conditions of confinement as distinct from the fact or length of the confinement itself. So that's a pretty comprehensive statement saying not claims for release based on conditions of confinement. It says to obtain review of conditions of confinement as distinct from the fact or length of confinement itself. And so that is the very distinction that Congress adopted when it carved out only core habeas claims, inquiring into what the Supreme Court has elsewhere described as or seeking invalidation in whole or in part of the judgment authorizing the prisoner's confinement. And this also relates to the reason why we think the different exhaustion regimes are, you know, appropriate in their spheres if conditions of confinement claims go under the PLRA. Habeas is a fundamentally backward-looking remedy. It looks at, and Congress in AEDPA emphasized this, it looks at what happened in the state court first and foremost. That is an appropriate form of exhaustion for a legal regime that is looking at does the state have a valid underlying right to confine this person based on its criminal process. That, and a backward-looking inquiry that with very few exceptions does not even allow consideration of new evidence is ill-suited to an inquiry into prison conditions, including an inquiry into prison conditions that might urgently require release because there's no other way to address the problem. All right. Speaking of exhaustion, thank you. Thank you. Mr. Bell. I'll just say regarding how we understand habeas, what Lord Blackstone may have believed, the only relevant question is how Congress has defined this issue, how Congress has legislated in this area. Congress did not as, unlike the way that Lord Blackstone may have viewed this issue, Congress did not define habeas to being limited to cases where there's a claim brought for release for a particular reason. It limited habeas to claims for release, and that is exactly what we have here. As to whether 3626, the PLRA, adopted Prisor's language, I agree with the state. The language of 2254, it just strikes me as it's telling us what's necessary but not what's sufficient. So it's necessary that it's a judgment of a state court only on the ground that he's in custody in violation of the Constitution and laws and treaties of the United States. What's before us, I think, is the question of whether that's sufficient or whether Congress through the PLRA and all of the cases that seem to divide the world between condition claims brought via 1983 and attacks on the conviction, the judgment of conviction or the sentence via habeas, what in that text do I look to to tell me the answer to that question of whether it's an argument seeking release based on a claim of a violation of the Constitution is sufficient? Well, I think that 2254A is saying that, I mean, it says a district court shall entertain a petition where the ground is that one is in custody in violation of the Constitution. And as Prisor said, I mean, Prisor's entire rule comes from 2254A. But that actually has nothing to do with the remedy of release. Well, it does because as the Sixth Circuit said in Williams, as the Third Circuit said in the Hope case, which were COVID cases agreeing with our position here. But you're making a textual point. And forgive me, maybe you're getting to it via the Sixth and Third Circuit's reasoning. But your argument, I think, at base is because we're seeking release, we're here. But you're pointing the language about the claim. The claim is that it's in violation of the Constitution. Well, because 2254A says on the ground that he is in custody and where someone is saying, as long as I am in custody here, it is a violation of the Eighth Amendment because the only fix here is to release me. That is an attack. That's reading into the text because I think you have to be in custody. That's true. But that doesn't tell us that the relief being sought is release from custody. Textually, I understand your argument more broadly. But textually, what's the argument? Because it says on the ground that he is in custody in violation here of the Eighth Amendment. So where someone is saying, keeping me in prison is unconstitutional. And there's no way that you can pull that off constitutionally. That is, as the Sixth Circuit has said, as the Third Circuit has said, is an attack on the custody itself. It's not saying, no, my custody is fine, but just fix the conditions inside the prison. That's not the claim. That's the run-of-the-mill conditions claim like in fielding. But that's not what we're saying here. And the text fits neatly within that. And I think that if the text doesn't do it, Prysor's analysis of the text does, because Prysor interprets the text in exactly this way, to be based on claims where you're seeking immediate release. That's at 499 through 500 of Prysor. That text also, Prysor's language there, also controls this case. So for those reasons, the district court should be reversed and further proceedings should be remanded. Thank you. Thank you to all counsel for your briefing and arguments in this very interesting case. That concludes the cases we'll hear on argument. All matters on today's calendar are submitted. And I'll ask the deputy clerk to please adjourn. Thank you. Do I stand adjourned?